[No. 15463.  Department Two.  January 20, 1920.]

## B. B. LUTEN, *Appellant*, v. MICHAEL EARLES, *Respondent*.[1]

APPEAL (418)—REVIEW—FINDINGS. The weight of conflicting evidence and the credibility of the witnesses are peculiarly within the province of the trial court, and its findings will not be disturbed unless clearly wrong.

BANKS AND BANKING (40)—TRANSFER OF STOCK—IMPLIED WARRANTY. There is no implied warranty on the sale of bank stock by reason of the exhibition of the books of the bank where the seller expressly refused to warrant the correctness of the books.

Appeal from a judgment of the superior court for King county, Frater, J., entered February 3, 1919, upon findings in favor of the defendant, in an action for breach of warranty in the sale of corporate stock, tried to the court. Affirmed.

*George H. Rummens* and *Poe & Falknor*, for appellant.

*Kerr & McCord* (*Wm. Z. Kerr*, of counsel), for respondent.

MOUNT, J.—This action is founded upon a breach of warranty in the sale of certain shares of bank stock. The action was tried to the court without a jury, and resulted in a judgment in favor of the defendant. The plaintiff has appealed.

The facts are as follows: Prior to August 19, 1914, Michael Earles was a stockholder in the American Savings Bank and Trust Company, a banking corporation in Seattle. The capital stock of this bank was $200,000, divided into 2,000 shares of $100 each. Michael Earles owned 776 shares of this stock. He was the vice-president and a member of the board of trustees. Prior to that date one John H. Haak and

[1] Reported in 187 Pac. 349.

S. C. Jackson desired to purchase the shares of stock held by Mr. Earles. Mr. Earles had an agreement with one or two other stockholders of the bank that he would not sell his stock unless he sold their stock along with his at the same price. The total of the shares of stock controlled by Mr. Earles in this way was 1,211 shares. During the negotiations for the sale of this stock, the books of the bank were examined by Mr. Haak and Mr. Jackson. The paper in the bank was examined and checked up. It was finally agreed that Mr. Earles would sell his stock for $300 per share to Messrs. Haak and Jackson, who represented undisclosed principals in the transaction. This sale was concluded on the 19th day of August, 1914. Upon that date the bank's books showed the cash on hand at that time to be $196,315.02. The cash was not counted that day until after the sale of the stock by Mr. Earles to Messrs. Haak and Jackson. When the cash was counted it was discovered that there was a shortage of $8,500. The persons who acquired these 1,211 shares of stock thereafter assigned their claims to the appellant, who brought this action to recover against Mr. Earles the difference between the value of the stock as agreed upon and as it was by reason of the shortage of $8,500 cash in the bank. The action is based upon an alleged warranty of Mr. Earles that the cash in the bank was as shown by the books.

The issue tried in the court below was whether there was an express warranty. Witnesses on behalf of the appellant testified, in substance, that, when the transfer of the stock was being made, it was suggested that, since the cash had not been counted, Mr. Earles should guarantee that the actual cash in bank was the same as shown by the books; that Mr. Earles agreed to this. On the other hand, it was testified by Mr. Earles and witnesses in his behalf that he absolutely refused to

make any guaranty of the cash on hand or of the assets of the bank. Upon this issue the trial court found as follows:

"That said stock in said bank was sold by the said Earles to the purchasers without any representation on his part whatsoever as to the amount of cash on hand and without any representation on his part that there was $195,315.02 in cash on hand or any other sum whatsoever, and said stock was sold by said Earles with the statement to the purchasers that he would not guarantee the condition of the bank, and with the further statement that the purchasers were to take the stock as it was without any guarantee or representation of any nature or kind whatsoever."

Appellant makes two contentions: First, to the effect that the court erred in making this finding; and second, that there was an implied guaranty that the books showing the amount of cash on hand were correct.

Upon the first question, from what we have already stated it is apparent that there was a conflict of evidence. Several witnesses for the appellant testified that there was an express guaranty. As many witnesses for the respondent testified that there was no such guaranty, or that there was an absolute refusal to make any guaranty whatever. Upon this conflict of evidence, the trial court found as we have above quoted. This court has many times announced the rule that, where there is a conflict, the questions of the weight of the evidence and of the credibility of the witnesses are questions for determination peculiarly within the province of the trial court, and will not be disturbed unless we are clear that the trial court was wrong. *Hackett v. Scott,* 59 Wash. 390, 109 Pac. 1030; *Barr v. Kerfoot Investment Co.,* 90 Wash. 471, 156 Pac. 392; *Harrison v. Smith,* 98 Wash. 154, 167 Pac. 89.

Under the record in this case, we cannot say that the evidence preponderates in favor of the appellant on this point.

It is next argued by the appellant that, even though there was no express guaranty, there was an implied guaranty by reason of the exhibition of the books of the bank to the purchasers of this stock. It is no doubt the rule that, where the books of a bank, for example, are shown to a prospective purchaser of bank stock, and where nothing is said with reference to the correctness of the books, there will be an implied warranty that the books are correct. But where there is an express refusal on the part of the seller of the stock to warrant the correctness of the books, there is no implied warranty. The rule is stated in 35 Cyc. 393, as follows:

"When the seller has expressly refused to give a warranty, no warranty can be implied by law."

A number of authorities are there cited to support the rule.

The rule is stated in 24 R. C. L., § 451, page 178, as follows:

"On the other hand a warranty will not be implied in conflict with the express terms of the agreement, it being well settled that the seller may by express provision exclude the implication or importation therein of any warranties on his part, . . ."

So it follows that, since the court, upon the trial of the case, found upon sufficient evidence that there was an express refusal to guarantee or warrant the amount of cash on hand in the bank, no implied warranty to that effect may be indulged.

The judgment of the trial court is therefore affirmed.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.